Argued and submitted May 28, 2015, reversed and remanded with instructions to dismiss plaintiff's declaratory judgment action February 3, 2016

Cosmo SALIBELLO,
*Plaintiff-Respondent,*

*v.*

OREGON BOARD OF OPTOMETRY,
*Defendant-Appellant.*

Multnomah County Circuit Court
130609108; A157157

367 P3d 932

Denise G. Fjordbeck, Assistant Attorney General, argued the cause for appellant. With her on the briefs were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Celia A. Barlow argued the cause and filed the brief for respondent.

Before Duncan, Presiding Judge, and Lagesen, Judge, and Flynn, Judge.

FLYNN, J.

**FLYNN, J.**

This appeal arises out of an action under the Uniform Declaratory Judgments Act, ORS 28.010 to 28.160. The trial court required the Oregon Board of Optometry to provide to plaintiff, Cosmo Salibello, a copy of the complaint that prompted a board investigation of Salibello's practices and a copy of the investigation summary that the board prepared after closing the investigation. The board argues that the Oregon Administrative Procedures Act (APA) provides the exclusive process for plaintiff to obtain the judicial intervention he seeks and, thus, the trial court lacked jurisdiction to enter the declaratory judgment. We agree and reverse and remand the judgment for dismissal of Salibello's complaint.

## BACKGROUND

The pertinent historical facts are undisputed. Salibello was an optometrist licensed to practice under ORS chapter 683. In 2011, after Salibello sold his optometry practice in preparation for retirement, the board notified Salibello that it was investigating a complaint against him. The board eventually ordered Salibello to appear and answer questions at an "interview with the Board in Executive Session." In anticipation of that interview, Salibello's attorney requested a copy of the board's "investigatory file," and specifically emphasized his need to understand the "nature of the complaint." The board refused to provide any documents to Salibello. In a letter dated April 18, 2012, the board's legal counsel explained that the board had "not yet decided" if Salibello was "facing disciplinary action" and that,

> "[p]ursuant to ORS 676.175(3),[1] the Board is not obligated for any release of information via discovery until or unless they vote to issue a notice of intent to impose disciplinary sanction against a Licensee."

The board never held the vote to which the letter referred. Instead, the board offered to close its investigation

---

[1] ORS 676.175(3) provides:

"If a health professional regulatory board votes to issue a notice of intent to impose a disciplinary sanction, upon written request by the licensee or applicant, the board shall disclose to the licensee or applicant all information obtained by the board in the investigation of the allegations in the notice [subject to several exceptions]."

in exchange for Salibello's agreement to convert his license status from "active" to "inactive," with the condition that the board would reactivate the disciplinary case if Salibello ever sought return to "active" status. Salibello accepted the board's proposal, and the minutes from a subsequent public meeting of the board report the terms of that agreement.

Salibello later became aware that the board had disclosed information about its investigation, including his acceptance of "inactive" status, to the person whom Salibello believed to have filed the complaint against him. Salibello's attorney demanded an explanation for the disclosure, emphasizing that the board had refused to provide Salibello a copy of the complaint. The board responded with a letter dated January 24, 2013, which explained that the board minutes and Salibello's agreement to become "inactive" were public records. The letter also explained that the board had sent a summary of its investigation to the complainant and that Salibello was entitled to a copy of that summary:

> "Oregon Revised Statute 676.175(2)(b) authorizes the board to disclose to a complainant a written summary of information obtained as part of an investigation of an applicant or licensee resulting from the complaint to the extent the board determines necessary to explain the reasons for the board's decision. An applicant or licensee may review and obtain a copy of any written summary of information disclosed to a complainant by the board after the board has deleted any information that could reasonably be used to identify the complainant."

The letter did not include an actual copy of the summary that the board sent to the complainant but quoted five paragraphs from that summary. The letter concluded, "[A]s we discussed earlier, the Board's investigations file on this case is and remains confidential; the Board would work through legal counsel to quash any subpoena for that information, as it is shielded from disclosure."

Salibello then filed this action under the Uniform Declaratory Judgments Act. He sought a declaration that he is a "licensee" for purposes of the disclosure requirements of ORS 676.175. He also sought an order requiring the board to "fully disclose the correspondence sent to the complainant

with complainant's name redacted" and an order requiring the board "to remit a true copy, with complainant's name redacted," of the complaint filed against Salibello.

In cross-motions for summary judgment, Salibello argued that he was entitled to the investigation documents while the board argued that the case should be dismissed because Salibello's "sole and exclusive remedy" for compelling the board to act was to file a petition under the APA. The board also represented that there was no dispute Salibello "is still considered a licensee." The court denied the board's motion, granted Salibello's motion, and entered a judgment declaring:

"1.   Plaintiff is a licensee and not a member of the public as that term is used in ORS 676.175(1).

"2.   Defendant must provide plaintiff with a true copy of Complaint No. 11-07-01.

"3.   Defendant must provide plaintiff with a true copy of the investigative summary it remitted to the complainant regarding [C]omplaint [N]o. 11-07-01."

The board appealed, and this court granted a stay of the judgment pending resolution of the appeal.

## ANALYSIS

On appeal, the board renews its argument that the APA provides the exclusive remedy for Salibello to pursue his demands for redacted "true" copies of the complaint and the investigation summary. We agree.

A court lacks subject matter jurisdiction under the Uniform Declaratory Judgments Act if some other exclusive remedy exists to address the dispute. *League of Oregon Cities v. State of Oregon*, 334 Or 645, 652, 56 P3d 892 (2002). When the dispute at issue involves an agency's action, or refusal to act, the review provisions of the APA provide the sole and exclusive means of obtaining judicial review, and an action for declaratory relief is not available. *Alto v. State Fire Marshal*, 319 Or 382, 395, 876 P2d 774 (1994); *see also Ashland Drilling, Inc. v. Jackson County*, 168 Or App 624, 630, 4 P3d 748, *rev den*, 331 Or 429 (2000) (when a remedy of judicial review exists under the APA, jurisdiction "is

exclusively under the APA," and there is no right to relief through the Declaratory Judgments Act).

A. *Judicial Review Under the APA*

The substance of Salibello's complaint was that, as a "licensee," he was entitled under ORS 676.175 to a redacted "true copy" of the complaint against him, as well as a redacted "true copy" of the investigative summary. The board identifies two provisions of the APA that describe procedures through which Salibello could have obtained judicial review of his right to the requested documents.[2] The first provision, ORS 183.484, describes the process for obtaining judicial review of agency orders in "other than contested cases," including the process for determining the circuit court in which the petition is to be filed, the time limits for filing, and the scope of the court's review authority. The review process described under ORS 183.484 is available to "any person adversely affected or aggrieved" by a "final" agency order. ORS 183.480; *Oregon Health Care Assn. v. Health Div.*, 329 Or 480, 488, 992 P2d 434 (1999) (explaining that ORS 183.480(3) limits judicial review under ORS 183.484 to only a "final order").

The second APA provision, ORS 183.490, provides that a "petition as described in ORS 183.484," may be used to "compel an agency to act where it has unlawfully refused to act or make a decision." Review under ORS 183.490 is available when an agency has not issued a "final" order and allows the circuit court to compel an agency to act "with greater alacrity," although not to compel the agency to act in a particular way. *Mendieta v. Division of State Lands*, 148 Or App 586, 598, 941 P2d 582 (1997), *rev dismissed*, 328 Or 331 (1999).

B. *Review of Salibello's Demand for a Copy of the Complaint*

Salibello's claim for a "true copy" of the complaint challenges a board decision that he could have challenged

---

[2] Although the board's APA argument has shifted throughout the course of the litigation and appeal, whether the APA provides Salibello a remedy is a question that must be resolved in order to determine whether the trial court had jurisdiction to enter a declaratory judgment. It, therefore, is a question that we are obligated to address, regardless of whether or how well a party has preserved the argument. *Dodds v. City of West Linn*, 222 Or App 129, 133, 193 P3d 24 (2008).

through a petition for judicial review under ORS 183.484. As Salibello emphasizes, he twice requested, and was denied, a copy of the complaint. The board repeatedly advised Salibello that it would not release the complaint to him unless the board voted to proceed with discipline, first in its letter of April 18, 2012, which denied Salibello's request for a copy of the "investigatory file," and then in its letter of January 24, 2013, which reiterated that "the Board's investigations file on this case is and remains confidential."

The board's letter of April 18, 2012, constituted a "final order" within the meaning of the APA, because it embodied the board's final decision regarding disclosure of the complaint during the investigation stage. *See* ORS 183.310(6)(b) (a final order embodies "final agency action expressed in writing"); *Norden v. Water Resources Dept.*, 329 Or 641, 643, 996 P2d 958 (2000) ("[A]gencies may issue orders in contested cases and orders in other than contested cases. In either context, an order is 'any agency action expressed orally or in writing directed to a named person or named persons * * *.'" (quoting ORS 183.310(5) (internal citations omitted))). That board decision was a decision in an "other than contested case[,]" and subject to judicial review in the circuit court under ORS 183.484, because no hearing was required. *See* ORS 183.310(2)(a)(A) (defining "[c]ontested case" as one "[i]n which the individual legal rights, duties or privileges of specific parties are required by statute or Constitution to be determined only after an agency hearing"). Finally, Salibello could have challenged the board's decision though the review process described in ORS 183.484, because his rights were "adversely affected" by the board's refusal to provide a copy of the complaint, ORS 183.480(1). That APA review process provided Salibello's exclusive remedy for challenging the board's decision to withhold the complaint and precludes the court from exercising jurisdiction under the Uniform Declaratory Judgments Act. *See Ashland Drilling*, 168 Or App at 630.

C. *Review of Salibello's Demand for a Copy of the Investigation Summary*

The board argues that its letter of January 24, 2013, also embodies a "final order" regarding Salibello's request

for a redacted "true copy" of the investigation summary, and thus was subject to challenge through a timely petition under ORS 183.484. It is less clear, however, that the letter expresses the board's "final order" regarding the investigation summary, because it also suggests a willingness to further consider providing a redacted true copy if asked.[3] *See Hawes v. DEQ*, 203 Or App 255, 263, 125 P3d 778 (2005) ("[W]hatever else may or may not qualify as a 'final order,' as a matter of plain text, an agency declaration or statement is not a final order for purposes of judicial review if that declaration or statement * * * does not preclude further agency consideration of the subject matter of the statement or declaration."). Ultimately, we need not resolve the ambiguity; whether the letter expressed a final refusal to provide a copy of the summary or a willingness to further consider the matter, the APA provided a process for Salibello to pursue his claim to a redacted "true copy" of the investigation summary.

To the extent the letter embodied a final decision to provide only excerpts of the investigation summary, ORS 183.484 provides the process through which Salibello could challenge that decision, for the same reasons that the statute provided a process for Salibello to pursue his demand for a copy of the complaint. Alternatively, to the extent the letter represents that the board remained willing to provide (or consider providing) a redacted "true copy" of the summary, ORS 183.490 provided the process for Salibello to compel the board to act "with greater alacrity" on that offer. We need not decide *which* APA process would have allowed Salibello to pursue his demand for the summary, because it is enough that the APA provided *a* process for judicial review of Salibello's demand. The APA process was Salibello's exclusive remedy and precludes his claim for relief under the Uniform Declaratory Judgments Act. *See Ashland Drilling*, 168 Or App at 630.

---

[3] By prefacing the quotation of text from the investigation summary with the explanation that a licensee has a statutory right to "review and obtain a copy of any written summary of information disclosed to a complainant by the board after the board has deleted" identifying information, the letter suggests that the board may have been willing to provide a redacted "true copy" of the summary if requested. Additionally, board counsel stated at the hearing that the board was "willing to give a redacted summary [of the investigation], which we already have, but we are willing to give it in a different form if counsel wishes."

## D. *Salibello's Claim for a Declaration of "licensee" Status*

Salibello does not deny that he could have pursued judicial review through the APA to address both his claim for the complaint and his claim for the investigation summary. He argues, however, that both claims depend on the premise that he remains a "licensee" for purposes of disclosures under ORS 676.175, and that the court had jurisdiction to declare his status as a "licensee" because the Uniform Declaratory Judgments Act "confers jurisdiction on a court to decide the status of a person whose legal rights are affected by a statute," pursuant to ORS 28.020.[4] Although Salibello correctly describes the authority conferred by ORS 28.020, in general, the court lacked jurisdiction to decide Salibello's "licensee" status because there was no "actual or justiciable controversy" regarding that status. *Morgan v. Sisters School District #6*, 353 Or 189, 195-96, 301 P3d 419 (2013).[5]

As the Supreme Court emphasized in *Morgan*, the jurisdiction granted by the Uniform Declaratory Judgments Act does not extend to addressing injuries that are only "hypothetical or speculative." 353 Or at 195. Rather, a declaratory judgment must "'resolve an actual or justiciable controversy,'" meaning "'a dispute based on present facts rather than on contingent or hypothetical events.'" *Id.* at 196 (quoting *TVKO v. Howland*, 335 Or 527, 534, 73 P3d 905 (2003)). The judicial controversy must exist at the outset of the litigation and continue "throughout the pendency of the case." *Couey v. Atkins*, 357 Or 460, 469-70, 355 P3d 866 (2015) (citing *Savage v. Munn*, 317 Or 283, 291-92, 856 P2d 298 (1993)).

---

[4] ORS 28.020 provides in part:

"Any person * * * whose rights, status or other legal relations are affected by a constitution, statute, municipal charter, ordinance, contract or franchise may have determined any question of construction or validity arising under any such instrument, constitution, statute, municipal charter, ordinance, contract or franchise and obtain a declaration of rights, status or other legal relations thereunder."

[5] We have previously emphasized that "[a] party may not circumvent the exclusive APA review process either by filing a declaratory judgment action after the time for petitioning for judicial review of the agency's decision has passed, or by filing a declaratory judgment action while the agency proceeding is pending." *Eppler v. Board of Tax Service Examiners*, 189 Or App 216, 219, 75 P3d 900 (2003) (internal citations omitted).

As Salibello acknowledges, the board made clear at the time of summary judgment that it did not dispute Salibello's status as a "licensee."[6] It argued, however, that Salibello's "licensee" status does not entitle him to the copies he sought. Indeed, the board first refused to provide the complaint when Salibello was still an "active" licensee. Nevertheless, Salibello argues that he "needed to have clarity regarding his status," given the board's "capricious nature." The most that can be said, then, of the alleged "injury" Salibello sought to avoid, is that there was a possibility the board would have challenged Salibello's "licensee" status had he sought judicial review under the APA. That "hypothetical or speculative" possibility did not create an "actual or justiciable controversy." *See Morgan*, 353 Or at 195-96. The trial court had no jurisdiction to enter a declaratory judgment.

Reversed and remanded with instructions to dismiss Salibello's declaratory judgment action.

---

[6] At the time of the summary judgment hearing, the board argued that it did not contest Salibello's "licensee" status and was willing to provide a redacted copy of the investigation summary, but Salibello believed the proposed redactions were too extensive.